# Clark *versus* Martin.

A volunteer mustered into the service of the United states for "during the war," under the act of Congress, approved July 25th, 1861, cannot claim the benefit of the stay law of 18th April, 1861. The term for which such volunteer enlisted being necessarily indefinite, the stay law, as applied to such a case, is unconstitutional.

A writ of assistance with *fi. fa.* for costs is civil process within the meaning of the stay law.

*Coram* WOODWARD, J., at Nisi Prius.

A final decree having been entered in favor of the above-named complainant in a proceeding in equity, writs of injunction, attachment and sequestration were, according to the equity practice, successively issued against the defendant to compel a

compliance with the decree. These writs proved ineffectual, and upon petition of the complainant and rule granted to show cause, the court ordered that writs of assistance and of *fi. fa.* for costs, issue for the enforcement of the decree. The defendant, upon affidavits filed, moved to set aside this order, on the ground that he had been mustered into, and still was in the service of the United States; and, therefore, under the act of April 18th, 1861, section 4, no civil process could be issued or enforced against him. Depositions in support of the motion were taken, and the matter was fully argued March 14th, 1863.

*Thomas S. Smith*, for the motion.

*Samuel C.* and *Samuel H. Perkins*, contra.

March 24th, 1863, opinion by

WOODWARD, J.—The process sought to be set aside, is that which was issued in execution of a decree in equity. I have no doubt that it is "civil process" within the meaning of the fourth section of our stay law of 18th of April, 1861; and that it ought to be stayed if that section, as applied to the facts of this case, can be considered constitutional. The Supreme Court have lately held it constitutional in two cases where the term of the military service was shown to be for three years, or during the war. These latter words being construed to mean less than three years. (See *Breitenbach* v. *Bush*, Legal Int. of March 6, 1863, and *Cox* v. *Martin*, MSS.)

But in this case the defendant's muster was on the 16th September, 1861, for the term of "during the war." There was no other definition of his term of service; this is shown by the muster roll and the certificate of the mustering officer, now before me. This muster could not have been under the act of Congress of 22d July, 1861; for that act authorized the President to accept not more than five hundred thousand volunteers "for such time as he should direct, not exceeding three years nor less than six months." Had the defendant been mustered under this act, his term would have been defined thereby, and would have been the same as in the adjudged cases above referred to.

But three days after this act, the President approved another act of Congress dated 25th July, 1861, which authorized him to accept any number of volunteers "the exigencies of the public service may, in his opinion, demand;" and, says the 2d section of this act, "they shall be mustered into the service for during the war." It was under this provision the present defendant was mustered in. No limitation or definition of his term can be obtained, except what is implied by the words "during

the war." These words, when found following a specific term of three years, were construed to mean less than that period; they were held to be not an extension of the specific period, but a possible abbreviation of it. Even as such, however, they were indefinite, and were so treated in the cases above referred to. Those cases were ruled on the ground that the maximum period was definite, and as that was considered not an unreasonable period under all the circumstances of the case, no account was made of the indefiniteness of the possible abbreviation. And the constitutionality of the stay law of 1861 was supported solely on the ground that the utmost stay it could give to the defendants was for a period of time that was definite and reasonable.

But how can that doctrine be applied to this case? I am conscious of a strong desire to give every soldier the benefit of the stay law, but Congress having most unwisely, as I think, made the enlistment of some soldiers definite and others indefinite, establishing thereby an invidious and embarrassing distinction; it is impossible to apply the act of 1861 alike to both classes. It is to be hoped that the act of 25th July, 1861, may be modified by the next Congress, so as to take away the difficulty encountered in this case.

If I am to put myself upon the reasoning of the Supreme Court in the cases above mentioned, and it is plainly my duty to do so, I must hold the stay law of 1861 inapplicable to this case, or unconstitutional if applicable. That law is valid only when it stays civil process for a reasonable time; and reasonableness includes definiteness. It has to be supported in the face of constitutional provisions which forbid the legislature to impair contracts, and which secure to every man for injury to his lands, goods, person or reputation, remedy by due course of law, and right, and justice without sale, denial or delay. Civil process is thus guaranteed to the citizen by a law that is higher than the legislature, and which they can no more alter or disregard than the humblest man in the State; but under the pressure of such extraordinary events as have crowded into our history for the last two years, the Supreme Court went to the extremest verge of the Constitution to sustain the stay law for three years and thirty days from the date of enlistment. I have no right to anticipate that they will sustain a legislative suspension of civil remedies for a period so indefinite as during the war. What can be more indefinite? The prevalence of a contagious disease; the duration of a panic in the money market; the successive failures of crops, or any other great public calamity would afford a rule of legislation quite as certain and definite as this deplorable war. The war does not suspend the constitutional rights of the citizen any more than those other calami-

[Bennett et al. *v.* Keith et al.   Mayer et al. *v.* Budd et al.]

ties would do.   They all constitute strong grounds for forbearance on the part of creditors; but the appeal on such grounds must be made to the discretion and humanity of creditors. Courts of justice cannot listen to it; they must give every man his meat in due season.   They would not be courts of justice if they did not, for in Justinian's Institutes, Lib. 1, justice is defined to be the constant and perpetual desire of giving to every man that which is due to him.

It is not fit or necessary that I should discuss the probable duration of the war.   Whether it shall last as long as the most timid fear, or shall be determined as soon as the most confident hope, its duration is essentially and in a very high degree uncertain, and that is all that I need to take notice of in this case. According to the settled doctrine of the courts, the legislature have not the constitutional power to suspend the civil remedies of a citizen for an unascertained and uncertain period.   The act of 1861, if applied here, would be such legislation, and therefore I have no right to give it effect.

The motion is dismissed.